UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUDY EVANGELISTO PEREZ CHAJ (A-Number: 246-934-406),<br><br>Petitioner,<br><br>v.<br><br>WARDEN, CALIFORNIA CITY DETENTION FACILITY,<br><br>Respondent. | Case No. 1:26-cv-3971-DAD-JDP<br><br>ORDER; FINDINGS AND RECOMMENDATIONS |

Petitioner Rudy Evangelisto Perez Chaj, a citizen of Guatemala, entered the United States in 2021 and was re-detained by ICE in 2025. Petitioner previously sought a writ of habeas corpus under 28 U.S.C. § 2241, arguing that his detention violates the Immigration and Nationality Act. The court ordered a bond hearing, at which petitioner was denied bond. Petitioner, proceeding pro se, now brings a second habeas petition, this time arguing that his re-detention violates due process. Respondent moves to dismiss. For the following reasons, I recommend that respondent's motion be denied, the petition be granted, and petitioner be immediately released.

**Background**

Petitioner is a native and citizen of Guatemala who first entered the United States in October 2021. ECF No. 1 at 3, 8. He was apprehended by immigration authorities and then released on his own recognizance. *Id.* There is no indication that petitioner violated any

conditions of release or committed any offenses in the United States. ECF No. 1 at 3, 8, 9; *see also* ECF No. 9. ICE re-detained petitioner on December 11, 2025. ECF No. 1 at 3, 8-9.

**Procedural History**

Petitioner initiated the previous action on February 20, 2026. *Perez Chaj v. Warden of California City Corrections Center* ("*Perez I*"), No. 2:26-cv-0510-DAD-JDP, ECF No. 1.[1] On February 26, 2026, the court granted petitioner's motion for a temporary restraining order and ordered respondent to provide petitioner with "an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a)." *Perez I*, No. 2:26-cv-0510-DAD-JDP, ECF No. 10. In ordering this relief on statutory grounds, the court acknowledged respondent's argument that petitioner "does not allege that he was previously detained . . . ." *Perez I*, No. 2:26-cv-0510-DAD-JDP, ECF No. 10.

On March 6, 2026, petitioner received a bond hearing. *Perez I*, No. 2:26-cv-0510-DAD-JDP, ECF No. 13 at 1. At that hearing, the immigration judge denied bond, finding that petitioner is a flight risk.[2] *Perez I*, No. 2:26-cv-0510-DAD-JDP, ECF No. 13-1 at 3-4.

On May 26, 2026, petitioner filed the instant petition and a motion for temporary restraining order, alleging that his re-detention violates due process. ECF Nos. 1 & 2. The court denied the motion for temporary restraining order as untimely, referred the matter to me, and set a briefing schedule. *See* ECF No. 5. The court then related the instant action to the previous action. ECF No. 8. As its sole responsive pleading, respondent filed a motion to dismiss on June 17, 2026. ECF No. 9. Petitioner has filed multiple documents in support of his petition and in response to the government's motion to dismiss.[3] ECF Nos. 10, 11, & 12.

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75

---

[1] To avoid confusion, all citations to the previous action will include the full case number. All standalone citations to the docket (e.g. "ECF No. 1") refer instead to the present action.

[2] Petitioner appealed this determination to the BIA. ECF No. 1 at 9.

[3] Petitioner also has filed a request for status and motion to expedite decision. ECF No. 13. In light of my recommendation that the petition be granted, I will deny this motion as moot.

(2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner claims that his re-detention without a bond hearing violates his due process rights. ECF No. 1 at 6-7. Notably, respondent offers no response to petitioner's due process claim. Instead, it argues solely that the petition should be dismissed as successive and as an abuse of the writ. ECF No. 9. Respondent argues that the instant petition presents "the same issues that were conclusively decided, or could have been conclusively decided," in the previous petition. *Id*. at 3. However, the previous petition did not raise the due process claim alleged in the instant petition. *See Perez I*, No. 2:26-cv-0510-DAD-JDP, ECF No. 1.

In fact, with respect to the first petition, respondent distinguished prior precedent by arguing that petitioner had not "allege[d] that he was previously detained." *See Perez I*, No. 2:26-cv-0510-DAD-JDP, ECF No. 9 at 4 (noting that petitioner "does not allege that he was ever previously detained by immigration officials since his illegal entry into the United Sates on or about October 25, 2021"). Respondent advanced this argument even though it presumably possessed records showing that petitioner was released after being detained by immigration authorities. Moreover, as noted, no court has decided petitioner's due process claim on the merits. Accordingly, I recommend denying respondent's motion to dismiss.

Courts analyze procedural due process claims in two steps: first, we consider whether there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest

accords with the Constitution. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). I consider each in turn.

To determine whether a specific conditional release rises to the level of a protected liberty interest, courts have compared "specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey* [*v. Brewer*, 408 U.S. 471 (1971)]." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted). In *Morrissey*, the Supreme Court explained that parole from a criminal conviction "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." 408 U.S. at 482. The court observed that while "the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, the petitioner's "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, in *Morrissey*, the Supreme Court found that a parolee in a criminal case possessed a protected interest in "continued liberty." *Id.* at 481-84.

Recently, confronted with questions similar to those raised by petitioner, courts in this Circuit have found that noncitizens released from ICE custody acquire a liberty interest in their continued release. *See, e.g.*, *Labrador-Prato v. Noem*, No. 1:25-cv-1598-DC-SCR, 2025 WL 3458802, at *5 (E.D. Cal. Dec. 2, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, No. 1:25-cv-00379-SASPKJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 481-82 (1972)); *Shoimov v. Chestnut*, No. 1:25-cv-1603-CSK, 2026 WL 35624, at *5 (E.D. Cal. Jan. 6, 2026). I agree with the bulk of other courts to have considered the issues presented here and find that petitioner has a protected liberty interest in his continued release.

Immigration officials released petitioner on his own recognizance in December 2021. ECF No. 1 at 3, 8. Since his release, petitioner has lived in the United States, subject to ICE supervision but outside of ICE custody, for over four years. *Id*. During that time, he has formed "enduring attachments of normal life." *See Morrissey*, 408 U.S. at 482. I conclude that petitioner's initial release and time out of custody have created a constitutionally protected liberty interest in continued release. *See Guillermo M. R. v. Kaiser*, No. 25-cv-5436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-5259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding released noncitizens to have strong liberty interests).

Once a court has found that a noncitizen has a liberty interest in continued release, the court must next determine what procedural protections the government must afford the noncitizen before depriving him of that liberty interest. This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

First, petitioner has a significant private interest in his continued release. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner acquired a private interest in continued release over the four years of his supervised release. *See Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

Turning to the second *Mathews* factor, the risk of erroneous deprivation is high. Prior to releasing petitioner in 2021, immigration officers necessarily determined that he presented neither a danger to the community nor a risk of flight. *See Pinchi*, 792 F. Supp. 3d at 1034 (explaining that a petitioner's "release from ICE custody after his initial apprehension reflected a determination by the government that he was neither a flight risk nor a danger to the community"). Absent a bond hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner's re-detention will not be pursuant to a valid state interest. *See Omer G. G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690).

"Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for his detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, No. 1:25-cv-00801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)). Respondent offers no evidence or argument indicating that any procedural safeguards were employed prior to petitioner's re-detention; more generally, it gives the court no reason to believe that any efforts were made to prevent erroneous deprivation of petitioner's liberty. *See* ECF No. 8. Accordingly, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *See A.E. v. Andrews*, No. 1:25-cv-0107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

"Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is 'low.'" *Salazar v. Casey*, No. 25-cv-2784-JLS, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025) (citation omitted). Indeed, respondent has provided no information about the additional burden that would fall on them as a result of being required to provide a pre-deprivation hearing. *See* ECF No. 9. "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, No. 1:25-cv-0978-KES-EPG, 2025 WL

2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).

Accordingly, a consideration of the *Mathews* factors demonstrates that petitioner's re-detention without a pre-deprivation violates his due process rights. While petitioner has received a bond hearing, that hearing was ordered to be in accordance with section 1226(a) such that petitioner carried the burden. *See Perez I*, No. 2:26-cv-0510-DAD-JDP, ECF Nos. 10 & 13-1. However, because petitioner's re-detention implicates due process concerns, the government needs to show by clear and convincing evidence that he is a danger to the community or a flight risk. *See Martinez v. Clark*, 124 F.4th 775, 780 (9th Cir. 2024); *Lopez v. Garland*, 631 F. Supp. 3d 870, 882 n.9 (collecting cases). Accordingly, petitioner has not been provided a constitutionally adequate bond hearing.

Given this finding, I must determine the appropriate remedy. Petitioner requests release or, alternatively, a new bond hearing. ECF No. 1 at 7. As noted, respondent does not address this issue. *See* ECF No. 9. The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful executive detention," and the "typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention.").

To satisfy due process, "the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). In some circumstances, however, the Court has held that a post-deprivation hearing satisfies due process, such as where there is "the necessity of quick action by the State or the impracticality of providing any predeprivation process." *Id.* at 128 (cleaned up). Where a petitioner is entitled to a pre-deprivation hearing, courts have found that "[t]he appropriate relief . . . is their immediate release from custody, and to be provided with relief returning them to status quo ante, i.e., the last uncontested status which preceded the pending controversy." *Cardin Alvarez v. Rivas*, No. 25-cv-2943-PHX-GMS, 2025 WL 2898389, at *21 (D. Ariz. Oct. 7, 2025), *report and recommendation adopted in part, rejected in part on*

*other grounds*, 2025 WL 2899092 (D. Ariz. Oct. 10, 2025).

Here, between his release in December 2021 and his re-detention in December 2025, there is no evidence that petitioner failed to comply with the terms of his release. Respondent has not provided in response to either petition any evidence regarding petitioner's criminal history, such as a RAP sheet, an arrest report, or court records. More fundamentally, there is no evidence, nor has respondent presented any argument, suggesting that there was "the necessity of quick action" by ICE such that petitioner could not have been provided a pre-deprivation hearing. *See Zinermon*, 494 U.S. at 128. Indeed, respondent does not presently argue that petitioner is a danger to the community or a flight risk. *See* ECF No. 8. Moreover, as noted, respondent has failed to provide petitioner with a bond hearing that complies with due process despite re-detaining him over seven months ago.

Under these circumstances, I find that the "typical remedy" of release is appropriate because the government has not provided a lawful justification for re-detaining petitioner without a pre-deprivation hearing or failing to provide petitioner with a prompt post-deprivation hearing that comports with due process. *See Munaf*, 553 U.S. at 693. Petitioner's due process rights have been violated such that the appropriate relief is immediate release from custody, thereby returning his to the "status quo ante." *See Cardin Alvarez*, 2025 WL 2898389, at *21.

**Conclusion**

Accordingly, it is hereby ORDERED that petitioner's request for status and motion to expedite, ECF No. 13, is DENIED.

Further, it is hereby RECOMMENDED that:

1. Respondent's motion to dismiss, ECF No. 9, be DENIED.

2. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

3. Respondent be ordered to immediately release petitioner (A-Number: 246-934-406) from its custody. Respondent shall not impose any additional restrictions on petitioner, unless that is determined to be necessary at a future pre-deprivation/custody hearing. If the government seeks to re-detain petitioner, it must provide no less than seven days' notice to petitioner and must hold a pre-deprivation bond hearing before an immigration judge at which the government shall

bear the burden of justifying petitioner's detention by clear and convincing evidence. This order does not address the circumstances in which respondent may detain petitioner in the event petitioner becomes subject to an executable final order of removal.

4. The Clerk of Court be directed to serve California City Detention Facility with a copy of this order.

5. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within seven days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within seven days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: July 29, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE